THOMAS, Justice. ...
The Board of County. Commissioners of Dade County appeal, from a, peremptory *582 writ of mandamus directing the commission to issue the necessary zoning permit so a beer and wine establishment known as “Ruth’s Bar” may resume operations.
The writ was based on facts we shall now attempt to detail. The appellee, Sarah Thatch, owned the real property on which beer and wine were sold by her tenant, one Violet Abromatis, until November 30, 1951, under a license issued by the State Beverage Department.
On August 13, 1951, a notice under Section 561.29(3), Florida Statutes 1951, and F.S.A. was served on Violet Abromatis informing her that she had permitted disorderly conduct, namely, betting on horse races, in her place of business, and had violated Sections 849.01 and 823.05, Florida Statutes 1951, and F.S.A. Whether the licensee requested the hearing secured to her in the law, we do not know.
Testimony on the subject of further notice, by a witness who described himself as the “District Supervisor of the Florida State Beverage Department,” was most unsatisfactory despite the effort of the chancellor to have it clarified, but it does seem that- a hearing was set for December 12, 1951, in a notice attempted to be served as late as the fourth of that month, which was not actually served, presumably because -the place was then closed. The record discloses that an employee of the licensee was convicted of crime November 13,1951, but the nature of the charge does not appear, so we would have to indulge in speculation to connect this prosecution with the violations charged in the notice of August 13, 1951.
On November 30, 1951, the tenant delivered the keys to the owner and the place of business was closed thereafter for at least six months. The property was leased to another tenant, the appellee, Clyde C. Thompson, June 9, 1952, and on July 7, 1952, he applied for a license to sell beer and wine on the premises.
It should be noted that no effort was made to renew the license held by Violet Abromatis. Section 561.26(1), Florida Statutes 1951, and F.S.A.
The new lessee first applied to the Board of County Commissioners for a “zoning permit” which we understand to be a permit to conduct a business on property so situated that the operation would not conform to zoning regulations. Failing in this he sought a license from the State Beverage Department and his request was denied. Section 561.44, Florida Statutes 1951, and F.S.A.
The use of property in violation of the zoning resolution of Dade County adopted pursuant to Chapter 17833, Laws of Florida, Acts of 1937, where the operation was in effect at. the time the zoning regulations were adopted will be tolerated as a “nonconforming” use until there is an abandonment, or discontinuance for a certain period. “No * * * premises,” according to the zoning resolution, “wherein or whereon a non-conforming usage is discontinued for a period of at least six (6) months * * * shall again be devoted to any use prohibited by [the] resolution * sfc * >i
So if a discontinuance of the business of selling beer and wine had lasted for six months the new lessee could not obtain a license, if in the zoning resolution there were inhibitions against that particular business at the location described in the pleadings. It was provided in the resolution, putting zoning into effect, that no property could be used for the sale of certain beverages, including beer and wine, where the property was located within 1,500 feet of an establishment where beer, wine of liquor was allowed to be sold and consumed. There were seven such places within that distance of the property of ap-pellees.
There is abundant evidence that the nonconforming use of the premises, that is, the sale of beer and wine there, was discontinued for a period of more than six months, and the county commissioners were not only justified in refusing a resumption of the business, but were prevented from *583 doing so by the very terms of the resolution effectuating zoning.
We cannot indulge in appellees’ favor the presumption that the place was closed because Helen Nester was arrested and convicted, or that the crime charged to her was one of those offenses named in the first notice, or that the running of the six-month period was affected by the reversal of the judgment of conviction.
It is our firm view that the appellees failed to demonstrate by their evidence that they had a clear right to a writ of mandamus so we are impelled to reverse the judgment entered in their behalf.
Reversed.
ROBERTS, C. J., and TERRELL and DREW, JJ., concur.